**WESTERN GUARANTY LOAN CO. et al.,**
**Appellants,**

v.

**Robert B. DEAN, Appellee.**

No. 15075.

Court of Civil Appeals of Texas.

Dallas.

Dec. 20, 1957.

Rehearing Denied Jan. 17, 1958.

859

Edward C. Fritz, Dallas, for appellee.

DIXON, Chief Justice.

Our opinions heretofore delivered in this appeal are withdrawn and in lieu thereof the following opinion is substituted.

Appellee Robert B. Dean originally filed suit against more than 20 loan companies and three insurance companies, alleging that he had been charged usurious interest on loans and had suffered damages by reason of the wrongful collection efforts of defendants.

As a result of settlements and dismissals most of the defendants had been eliminated by the time the case came on for trial. After a trial in which more than 300 issues were submitted to a jury, a judgment was rendered as follows: Against Western Guaranty Loan Company for $224.40 as double usury charges, and $1,800 as damages for reckless collection efforts; against Louis K. Cassett, J. H. Pollack and Joseph H. Pollack, doing business as Royal Finance Company, for $174.56 as double usury charges, and $600 as damages for reckless collection efforts; and against Chlo Vean Smith Wheatley for $40.98 as double usury charges, and $1,800 for reckless collection efforts. Judgment was rendered in favor of defendants W. L. Caldwell and Mrs. J. A. Allison, owners of Triangle Loan Service based on the jury verdict; and judgment non obstante veredicto was rendered in favor of defendants Bankers Health and Accident Company, City National Life Insurance Company, and Southern Life Insurance Company. All defendants against whom judgment was rendered have appealed. Appellee Dean has appealed from the judgments in favor of other defendants.

### Appeal of Western Guaranty Loan Company

In its first point on appeal Western Guaranty Loan Company says that it was error to render judgment for damages, since the jury found that the Company's

Jack C. Burroughs, Johnson & Abney, Fred S. Abney, H. B. Houston, and C. C. Renfro, Dallas, and Pat Beadle, Clarksville, for appellants.

efforts were exerted without malice and without any purpose to harm appellee Dean.

It is true that the jury found that appellant in its collection efforts was not actuated by malice (issue No. 27); and that said efforts were not made with a purpose of causing appellee mental and emotional pain and suffering (issue No. 21). But it is also true that the jury found that appellant made unreasonable collection efforts (issue No. 15); with reckless disregard for appellee's health and welfare (issue No. 18); as a result of which collection efforts appellee lost compensation from his work from June 22, 1949, to the date of the trial (issue No. 25); in the amount of $1,800 (issue No. 26).

In our opinion the jury's answers to issues Nos. 15, 18, 25 and 26 are sufficient to support the judgment of $1,800 actual damages allowed by the court. Loss of compensation in connection with one's employment is a proper element of damages in a tort action. Duty v. General Finance Co., 154 Tex. 16, 273 S.W.2d 64; Askins, Inc., v. Sparks, Tex.Civ.App., 56 S.W.2d 279; Cotton v. Cooper, Tex.Com.App., 209 S.W. 135. The phrase *reckless disregard of plaintiff's welfare* is so like unto the phrase *gross negligence* that for purposes of this case the two phrases may be taken to have substantially the same meaning. Therefore the finding of *reckless disregard for plaintiff's welfare* will support a recovery for damages. Wood v. Orts, Tex.Civ.App., 182 S.W.2d 139; Tri-State Transit Co. v. Gay, 179 Miss. 75, 172 So. 742; 30-B Tex.Jur. 199–201; 18A Words and Phrases, Gross Negligence, pp. 534–538, 583; 36 Words and Phrases, Reckless, p. 491. Appellant's first point on appeal is overruled.

In its second point on appeal appellant Western Guaranty Loan Company asserts that the judgment against it was erroneous because, (a) there was no pleadnig to support the judgment; (b) there was no evidence to show "direct and proximate result"; and (c) the verdict precludes a judgment for appellee in that the jury found that appellee did not suffer any mental and emotional pain and suffering and physical illness.

■ Dean pled the provisions of the City Code of Dallas, Arts. 73–76, forbidding lenders to communicate with employers of borrowers with intent to harass or annoy said employers. He pled also the following: That appellant called him constantly from 8:00 A. M. to 6:00 P. M. at home and at work; that appellant threatened to cause him to be discharged from his employment; that appellant flooded Dean at home and at work with letters, dun cards, etc., and spoke to appellee's supervisors at his place of employment; that his supervisors warned appellee that if this continued he would probably be discharged; that such program of harassment was done with reckless disregard to appellee's welfare; and was done negligently; with the direct and proximate result that Dean's ability to work declined and he was discharged from his job at which he was making $60 per week; and given a lesser job at which he was able to make only $12.50 to $25 per week.

■ Without setting out the evidence in detail we shall simply say that appellee Dean's testimony parallels and supports the above findings.

■ The jury was expressly instructed to answer issue No. 25, the damage issue, only in the event issue No. 15, or No. 18, or No. 21 had been answered "Yes". Since issues Nos. 15 (unreasonable collection efforts) and 18 (reckless disregard) were both answered "Yes", we think the jury verdict supported the judgment. Appellant's second point on appeal is overruled.

The third point on appeal of this appellant is that it was error to render judgment against appellant for $1,800 "resulting directly" from the collection efforts because (a) there is no pleading to support the issue; and (b) no evidence as to the amount of Western Guaranty Loan Company's responsibility "as distinguished from that of

all, or any, of the other defendants jointly sued for the same damages."

Appellee expressly pled that his action for damages is indivisible among the various defendants "because it is impossible to divide the causation of * * * injuries among the defendants." Appellee's testimony is in accord with his pleading. He testified that he didn't know which defendant caused his injury because "it was just a blanket operation * * * It is like a buzz saw that hits a fellow. Could you tell which tooth bit into you? It is the same proposition * * *."

■ Issue No. 26, the damage issue, inquired what damages, if any, resulted "directly from such collection efforts, if any, of Western Guaranty Company." The wording of the issue placed the burden on the jury of dividing the damages to the extent of allotting a certain amount to Western Guaranty Company as distinguished from other defendants. This was error. Appellee himself pled and the evidence showed that his damages were indivisible. Under the circumstances the issue should have inquired as to the entire damage suffered by appellee because of the efforts of all defendants whose collection efforts were wrongful. For a full discussion of this principle see Industrial Finance Service Co. v. Riley, Tex.Civ.App., 295 S.W.2d 498 (affirmed as to the question here involved in Tex., 302 S.W.2d 652); Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731. Appellant's third point on appeal is sustained.

Appellant's fourth point is that the court erred in overruling appellant's motion for instructed verdict because (a) its cause of action for damages had been satisfied and extinguished by settlements totaling $3,700 paid in by other defendants sued jointly in the same indivisible action, and (b) written releases had been made in connection with such settlements. In the alternative, appellant asserts that the court erred in refusing to credit the judgment against appellant with the amounts so paid by other defend-ants in settlement of appellee's claim against them.

■ We are unable to agree with appellant. The written settlement agreements with certain defendants expressly provided that appellee preserved and did not dismiss his suit against other defendants. Such an agreement did not operate as a release of the other defendants. 36 Tex.Jur. 824–826. The $1,800 damages found by the jury in this case is the amount found to have been caused purportedly by appellant Western Guaranty Loan Company alone. As we pointed out in our discussion of appellant's third point, there has been no finding of the entire amount of damages caused jointly by all the defendants. Obviously until the entire damage suffered by appellee has been ascertained, the amount of the settlements cannot be credited on the judgment for damages.

Furthermore, whatever sums other defendants may have paid in settlement of Dean's claims for usury and double usury penalties and for exemplary damages are not to be credited against whatever judgment Dean may recover for the entire indivisible actual damages suffered by reason of the combined excessive collection efforts of defendants. For each defendant loan company is answerable alone and separately for usurious interest received and for the penalty of double usurious interest and for such exemplary damages, if any, as may be found by the jury. Appellant's fourth point is overruled.

The fifth point on appeal is to the effect that the court erred in rendering judgment based on certain answers of the jury in connection with renewals and service charges on loans made prior to June 22, 1949 because the same related to matters barred by the two-year statute of limitations. Appellant says that the double usury penalty as computed by the court included sums of $10.20 paid by appellee on each of seven dates as listed in issue No. 2A. Six of these payments totaling $61.20 were made prior to June 22, 1949.

In a counterpoint appellee points out that the trial court pursuant to Rule 279, Texas Rules of Civil Procedure, filed findings of fact showing that appellee also made seven payments of $10.20 beginning Dec. 21, 1949. The only question involved, says appellee, is how to apply the payments on the first four of the last eleven of the total of fourteen $10.20 payments. Appellee chose to apply his payments, first against principal, and last against interest. This, contends appellee, was the way the court computed the usurious interest paid and the double penalty allowed.

For two reasons, we believe appellee is in error. First, as appellee concedes, the double usury computed according to appellee's method does not reach the result of $224.40, the double penalty allowed by the court. The result, computed appellee's way, would show $10.20 more usurious interest paid and $20.40 more penalty incurred than the court allowed.

■ Second, issue No. 2A expressly inquires *what amount of interest appellee Dean paid on each of the listed dates.* Six of these dates were prior to June 22, 1949. The jury in each of these six instances answered that Dean *paid interest* in the amount of $10.20. We think the jury verdict binds the court, rather than appellee's claim that his payments were applied, first on principal, and last on interest.

In our opinion six payments of usurious interest totaling $61.20 are barred by limitation. As a result, the double penalty judgment should be reduced by the sum of $122.40. Appellant's fifth point is sustained.

In its sixth point appellant says it was error to render judgment for usury penalties based on the amounts of service charges found by the jury under special issue No. 2A, because the only evidence relating to the matter shows without dispute that no service charges were made in connection with the transactions inquired about.

Special issue No. 2A was as follows: "What amount of interest, if any, *exclusive of 'service charges'* do you find Robert B. Dean paid Western Guaranty Loan Company upon the loans of on or about each of the following dates? Answer in dollars, if any, and cents, if any." (Emphasis supplied.) The jury's answer was that seven such payments of $10.20 each were made on named dates between January 17, 1948 and July 11, 1949.

The issue as worded does not include "service charges." It expressly excludes "service charges." Appellant's sixth point is overruled.

■ Appellant's seventh point is that it was error to include credit insurance premiums as a part of the usurious interest charged and paid by appellee.

Appellee in connection with each loan paid credit insurance premiums at the loan company's office to agents and employees of Western Guaranty Loan Company who were acting also as agents for Bankers Health and Accident Company. In connection with these premium payments the jury found that Bankers Health and Accident Company, through its agents, the employees of Western Guaranty Loan Company, charged appellee Dean for credit insurance policies on his loans as follows: (1) Charged appellee for both a personal protection policy and a special income hospital policy on his loan of December 21, 1949 (issue No. 3); this violated Art. 3.53, sec. 5, of Insurance Code, V.A.T.S.; (2) with intention of never paying dividends thereon (issue No. 4); this violated Art. 14.03, Insurance Code; (3) in an amount greater than the amount of his loan, with a purpose of increasing the proportion of its charges to the amount of money lent (issue No. 6); (4) induced appellee to renew his loans in advance of expiration thereof with the purpose of increasing the proportion of its charges for credit insurance to the amount of the principal outstanding (issue No. 8); by issuing a new policy at the time of renewal of each loan, the insurance

company and the loan company violated Art. 3.53, sec. 5, of Insurance Code; (5) failed to afford appellee an option to select an insurance company and an insurance agent of its own choice (issue No. 10); this violated Art. 3.53, sec. 4, Insurance Code; (6) failed to issue any notice to appellee of its annual meeting (issue No. 11); this violated Art. 14.04, Insurance Code; (7) failed to maintain a roster of its members (issue No. 12) this violated Art. 14.13, Insurance Code; (8) with a purpose of participating in the obtaining of compensation for the use of money in excess of 10 per cent per annum (issue No. 13). The jury also found that appellant Western Guaranty Loan Company charged appellee Dean for credit insurance policies in connection with loan transactions with a purpose of obtaining compensation for the use of its money in excess of 10 per cent per annum (issue No. 14).

Appellee contends that the undisputed evidence shows numerous other violations of the Insurance Code. However that may be, the foregoing jury findings, which are supported by sufficient evidence, brand the premium payments as part of the usurious interest charges exacted by the loan companies. Ware v. Wright, Tex.Civ.App., 266 S.W.2d 188. Appellant's seventh point is overruled.

Appellant's eighth point charges error in rendering judgment for usury penalties based on insurance premiums paid by appellee because the evidence shows that appellee accepted the policies issued to him, did not seek to return the policies, did not request cancellation thereof, and did not plead or prove facts in this action for usury penalties that would entitle him to a return of the money paid for premiums. Appellant did not by name plead estoppel and did not request any issue on estoppel, and none was submitted. Estoppel, under its own name or under some other name, in a case of this type is not applicable. Appellant cannot evade its liability for usury penalties by pleading estoppel or by failing to plead estoppel. A court will look through the form to the substance of a transaction and if it be usurious in intent and in fact, the court will condemn it, no matter how the transaction may have been disguised. This is true even in cases where the victim pays usury with the knowledge that it is usury. Associates Inv. Co. v. Thomas, Tex.Civ.App., 210 S.W.2d 413; Glover v. Buchman, Tex.Civ.App., 104 S.W. 2d 66. Appellant's eighth point is overruled.

Appeal of Chlo Vean Wheatley, Owner of Empire Service Company (Including Cross Assignment of Appellee Dean).

Appellant Chlo Vean Wheatley has adopted the propositions and points of law asserted in the brief of Western Guaranty Loan Company. Insofar as the points presented in that brief are applicable to the facts and law questions presented by the appeal of Chlo Vean Wheatley, our holdings will be the same as in the appeal of Western Guaranty Loan Company. This means that we sustain as to Chlo Vean Wheatley the proposition presented in the third point on appeal of appellant Western Guaranty Loan Company; that is, that the judgment was erroneous for the reason that it sought to assess a certain portion of the damages against Chlo Vean Wheatley alone, though the damages are admittedly indivisible among several defendants. Because of such error the judgment as to Chlo Vean Wheatley must be reversed and the cause as to her reversed and remanded for another trial.

However appellant Chlo Vean Wheatley has separately presented seven points on appeal which we shall now proceed to consider.

The first of the other points on appeal of Mrs. Chlo Vean Wheatley, owner of Empire Service Company, is that she was not sued by her right name, her husband was not joined as a party and was not served with citation; therefore the judgment by default against her is invalid under Art.

1985, Vernon's Annotated Civil Statutes, because of her disabilities of coverture.

The record shows that among the defendants named in plaintiff's (appellee's) original petition were Chlo Vean Smith and her husband Robert Smith. Citation was served on July 26, 1951, on Chlo V. Smith; on July 14, 1953, appellee as plaintiff filed his second amended petition and among the defendants was "Chlo Vean Smith Wheatley." This pleading alleged and the evidence showed that Robert M. Smith had divorced Chlo Vean Smith in 1950 and that Chlo Vean Smith had thereafter married John Wheatley. The testimony of Chlo Vean Wheatley given on motion for new trial, was that she had divorced John Wheatley January 14, 1955. So far as the record shows, she was a single woman at the time of the trial and at the time judgment by default was rendered against her on April 29, 1955.

Chlo Vean Wheatley did not file an answer and was not represented by counsel at the trial. However she did file a motion for remittitur after judgment was rendered against her for $1,849.95, which motion was sustained, and appellee filed a remittitur which reduced to $800 the amount of the damages against her for excessive collection efforts. She also filed a motion for new trial, which was overruled.

Evidence introduced at the trial showed that Chlo Vean Wheatley was the owner of Empire Service Company, having started the business herself after her divorce from Robert M. Smith in 1950. She was the owner at the time Empire Service Company made loans to appellee Dean.

■■■■ The position taken by appellant Chlo Vean Wheatley in her first point is untenable for several reasons. The service of citation on appellant when she was a married woman was not a nullity. Appellee sought a personal judgment against her arising out of a separate business owned by her. She waived the defense of coverture by not pleading it. Whisenant

v. Thompson Bros. Hardware Co., Tex.Civ. App., 120 S.W.2d 316; Matthies v. Rannals, Tex.Civ.App., 91 S.W.2d 380; 23 Tex. Jur., "Husband and Wife", sec. 294. The fact that she was a single woman at the time of the trial and at the time judgment was rendered against her cured the defect of service on her when she was a married woman, and the cure related back, in its operation, to the commencement of the suit. City of Dallas v. Morris, 120 Tex. 181, 36 S.W.2d 702. By filing her motion for remittitur and for new trial she entered her appearance in the case, thus curing the defects, if there were any, in the service of process against her. And by perfecting her appeal to this Court she has also entered her appearance. In a retrial of the case following reversal on appeal, appellant Chlo Vean Wheatley will be before the trial court for all purposes, if her status remains unchanged. Rule 123, T. R.C.P.; Industrial Finance Service Co. v. Riley, Tex.Civ.App., 295 S.W.2d 498; Erwin v. Holliday, 131 Tex. 69, 112 S.W.2d 177; American Soda Fountain Co. v. Hairston Drug Co., Tex.Civ.App., 52 S.W.2d 764. Appellant's first point on appeal is overruled.

In her second, third and fourth points on appeal this appellant presents questions which will not arise in a retrial of the case, so we shall not pass on them in this appeal.

■■■ In her fifth point appellant claims that a release taken by her former husband Robert M. Smith had the effect of releasing her also. There is no merit in this contention. Chlo Vean Smith and her husband had interests in several loan companies. But Robert M. Smith had no interest in Empire Service Company so far as the record shows. Chlo Vean Smith Wheatley testified that she organized Empire Service Company after her divorce from Robert M. Smith. The release of Robert M. Smith expressly reserved appellee's rights against other defendants. At the time of the execution of the release Robert M. Smith was not the husband of this appellant. He was her

former husband. Chlo Vean Wheatley's fifth point is overruled.

In her sixth point appellant ignores appellee's allegations in his amended pleadings as to decreased earning capacity, because said allegations, according to appellant, were not in appellee's original petition,—the pleading in effect when citation was served on her. Appellant also contends that since the jury found that appellee suffered no illness, there was no basis for a judgment against her for damages for lost earnings. In our opinion it was not necessary for appellee to issue and serve a new citation in connection with his amended pleadings. Nathan v. Brashear, Tex.Civ.App., 105 S.W.2d 328; Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709. The effect of the jury's answers was discussed by us in connection with the first point on appeal of Western Guaranty Loan Company. Appellant's fifth point is overruled.

In her sixth point appellant asserts that the settlements made by appellee with other defendants should be credited on the judgment against her; and since the credits amounted to more than the judgment against her, no judgment at all should have been rendered against her. As we pointed out in our discussion of the fourth point of appellant Western Guaranty Loan Company, credits for these settlements cannot be properly applied until there has been a finding of the entire actual damages suffered by Dean as a result of the excessive collection efforts of appellants. The seventh point of appellant Chlo Vean Wheatley is overruled.

In a cross-assignment of error appellee Dean complains because the trial court required him to remit all but $800.00 of a judgment for $1,840.90 as damages caused by the collection efforts of Chlo Vean Wheatley.

Only damages of $800 caused by appellant Chlo Vean Wheatley were alleged by appellee Dean in his original petition, which was the only pleading served on appellant. Later appellee filed amended pleadings in which he alleged and prayed for a much larger recovery. No new citation was served on appellant after the filing of the amended pleadings. The trial court sustained appellant's motion to require a remittitur on the ground that the amended pleadings asserted a new cause of action in that they increased the amount of damages sought, consequently appellee Dean could not recover more than the $800 prayed for in his original petition.

The transactions giving rise to the cause of action were the same in the original pleading and the amendments. The only material difference was in the amount of the damages for which recovery was sought. It has been held that an amendment merely increasing the amount of the recovery prayed for does not state a new cause of action so as to require new service of citation. Lee v. Boutwell, 44 Tex. 151; Hunt v Wroe, Tex.Civ.App., 129 S.W.2d 768; Nathan v. Brashear, Tex.Civ.App., 105 S.W. 2d 328.

Anyway, appellant, as we pointed out in our discussion of her first point on appeal, has by this appeal now entered her appearance for a new trial after reversal of this judgment. The question presented here on appellee's cross-assignment will not likely arise again on another trial. Appellee's cross-assignment of error is sustained.

Appeal of Louis K. Cassett, J. H. Pollack and Joseph H. Pollack, Owners of Royal Finance Company (Including Cross Appeal of Robert B. Dean).

Royal Finance Company has also adopted the points in error urged in the brief of Western Guaranty Loan Company. So far as said points are applicable to the pleadings and facts shown in the record pertaining to Royal Finance Company, our holdings will be the same as indicated in our discussion of the appeal of Western Guaranty Loan Company.

Royal Finance Company in a separate point of appeal says that appellee Dean, having accepted the insurance policies and paid for them, is estopped from claiming that insurance premiums paid constituted a part of usurious interest paid. We think our discussion of the eighth point of Western Guaranty Loan Company needs no amplification here. Appellant Royal Finance Company's first point is overruled.

In its second point, this appellant complains because of judgment of $600 for lost earnings, though no issue was submitted to the jury on that subject as to this appellant. After return of the jury verdict the trial court himself, upon motion of appellee, made a finding of $600 as the amount of said damages. Appellee Dean contends that the action of the trial court was permissible under Rule 279, T.R.C.P. As this cause will be remanded for another trial and such a situation is not likely to develop again on a retrial, we see no need to pass on the question here.

Appellee Dean presents three cross-assignments of error. In the first he complains of the court's sustaining appellants' objection to the testimony of Robert B. Dean and the introduction of numerous exhibits concerning medical and hospital services and expenses for Mrs. Dean. The trial court, says appellee Dean, wouldn't let him prove that his wife's medical, nursing and hospital expenses were reasonable and necessary until he had proved that they had been incurred, and wouldn't let him prove that they had been incurred until he had proved that they were reasonable and necessary. Later, after appellee had produced medical testimony as to such medical and hospital services, the court refused to let appellee testify as to expenses incurred for said services because the pleadings were not sufficiently specific to support the testimony. Appellee cites Owl Taxi Service v. Saludis, Tex.Civ.App., 122 S.W. 2d 225; Uvalde County v. Oppenheimer, 53 Tex.Civ.App. 137, 115 S.W. 904; Galveston, H. & H. R. Co. v. Greb, 63 Tex. Civ.App. 78, 132 S.W. 489; Payne v. White House Lumber Co., Tex.Civ.App., 231 S.W. 417; Inland Waterways Pipe Line Co. v. Lipstate, Tex.Civ.App., 78 S.W.2d 240; Missouri K. & T. Ry. Co. of Texas v. Patterson, Tex.Civ.App., 164 S.W. 442; 25 Tex.Jur. 477. We think the testimony and exhibits should have been admitted, so we sustain the first cross-assignment of appellee Dean. However the questions presented by the record on this point are so easily cured and eliminated that surely they will not be allowed to recur on a retrial of the case.

Appellee's second cross-assignment is that the court should not have sustained objections to the proffered testimony of Dr. Maxfield as to the reasonable value of medical, hospital and nursing expenses for Mrs. Dean, appellee's wife. This testimony was excluded on the ground that it was hearsay. In our opinion the question did not call for hearsay; it called for opinion evidence as to reasonable value of services which, under the record, Dr. Maxfield was qualified to give. Appellee's second cross-assignment is sustained.

Appellee's third cross-assignment complains of this instruction: "You are instructed that in answering any issues regarding the mental anguish and physical suffering and physical illness, if any, regarding Mrs. Dean, that you will not and must not consider any pain and suffering or physical illness that she may have had resulting exclusively from the disease of toxic thyroid, or exclusively from high tension, or exclusively from hypertension or high blood pressure, or exclusively from an enlarged heart condition, or exclusively from a heart ailment, or exclusively from nephritis, or exclusively from a disease of the kidneys, and you are further instructed that you will not consider any of the evidence or pleadings or discussions which you have heard in regard to any hospital expenses for Mrs. Dean."

Among several objections by appellee to the above charge were these: (1) The instruction amounts to a general charge; (2)

contains a comment on the weight of the evidence; (3) precludes consideration of testimony of Dr. Maxfield that stress is a causation factor in hypertension and toxic thyroid, and the latter may lead to kidney trouble; (4) does not include aggravation of existing diseases; and (5) the instruction, if given, should have been accompanied by an additional instruction as follows: "If you find that any illness of Mrs. Robert B. Dean, although not having been caused by the collection efforts of Royal Finance Company, was contributed to or aggravated by such collection efforts, then in answering the special issue concerning same, you may consider not only the aggravation thereof, but also the effect which such aggravation had upon the mental and physical condition of Mrs. Dean, including mental pain and suffering and physical suffering."

■ In our opinion the charge was erroneous. Even if appellee's wife suffered exclusively from any or all of the diseases named in the charge, appellee would be entitled to recover damages if the unreasonable and reckless collection efforts of appellant were the proximate cause of said disease, or diseases, or were the proximate cause of an aggravation of pre-existing disease or diseases. Appellant was certainly entitled to an instruction on the subject, but we believe that under the evidence shown in the record appellee's objections to this particular instruction were good. The question of a proper instruction is discussed in Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683. We sustain appellee's third cross-assignment.

### Appeal of Dean As To Triangle Loan Service Company.

The jury answered special issues in favor of W. D. Caldwell and Mrs. J. A. Allison, two of the owners of Triangle Loan Service Company. The trial court rendered judgment based on the jury verdict in favor of Caldwell and Mrs. Allison. Robert B. Dean, plaintiff in the trial court, has appealed.

In his one point on appeal Dean alleges that the court erred in refusing to admit in evidence plaintiff's copy of data taken from defendants' ledger cards, the originals of said cards having disappeared since plaintiff copied them.

Dean testified that he had borrowed from Triangle Loan Service Company on several occasions but, testifying from memory, he was unable to give exact information as to dates, amounts, etc. To fill in the gaps in Dean's testimony, he offered exhibit No. 440, which purported to be a copy of data taken from the ledger cards of Triangle Loan Service Company.

Dean had earlier filed a motion for discovery under Rule 167, and the court had required the loan company to make the cards available. The secretary of Dean's attorney had gone to the office of the attorney then representing the loan company, and had made a copy of the data shown on the cards.

At the trial Dean made demand on defendants to produce the original cards. Caldwell and Mrs. Allison meantime had disposed of their interests in the loan company. Their present attorney and the present attorney of the loan company both took the stand and testified that they did not have the cards and did not know where they were.

Dean's attorney took the stand as a witness and offered in evidence the copy made by his secretary, the copy being designated as exhibit No. 440. The attorney testified that the copy was made by his secretary under his supervision. However he did not testify, and apparently was not in position to testify that the exhibit was a true and correct copy of the data shown on the original ledger cards kept by the loan company. Nevertheless appellant Dean contends that the exhibit was admissible (1) under the best evidence rule after he had made demand on the defendants to produce the original cards at the trial and they had failed to do so; and (2) under Art. 3737e,

V.A.C.S., as part of his, Dean's attorney's business records, the exhibit having been kept in the attorney's files in the attorney's custody.

■ We think the exhibit was admissible under the best evidence rule provided it was properly identified as a true and correct copy of the data on the loan company's original ledger cards, which defendants failed to produce on demand. But no such identification was made. The secretary of Dean's attorney who had made the copy and could doubtless have testified that it was a true and correct copy, had moved to Illinois. Her deposition had not been taken.

■ Appellant Dean says that under Art. 3737e, sec. 2, a witness does not have to have personal knowledge as to the business records of which he is custodian. The statute does so provide, but in our opinion exhibit 440, being no more than a copy of the loan company's business record, is not to be considered as a business record of Dean's attorney in the sense contemplated in Art. 3737e, V.A.C.S. It was not admissible under Art. 3737e, V.A.C.S. Appellant Dean's point on appeal is overruled.

### Appeal of Dean As To Three Insurance Companies.

In our discussion of the point on appeal of Western Guaranty Loan Company we referred to certain jury findings involving Western Guaranty Loan Company and Bankers Health and Accident Company. The jury expressly found (issue No. 13) that Bankers Health and Accident Company charged Dean premiums with a purpose of participating in the charging of usury.

The jury made substantially the same findings as above as to the activities of Bankers Health and Accident Company through its agents at Empire Service Company (issue Nos. 118–152), First Finance Company (issues Nos. 160–169), except as to unreasonable collection efforts and dam-

ages for same; Main Finance Company (issues 187–194); and Employees Service Company (issues Nos. 215–223). A similar jury verdict was returned as to City National Life Insurance Company and Southern Life Insurance Company.

Appellee Bankers Health and Accident Company in its motion for judgment non obstante veredicto (Transcript Vol. II, pp. 126–134) urged the court to disregard the jury's answers to issues Nos. 3B, 4, 6, 8, 10, 11, 12, 13, 133, 135, 136, 138, 139, 160, 161, 163, 164, 166, 168, 187, 189, 192, 193, 215, 217, 218 and 220, because each of said answers was (a) without support in the pleadings, (b) without support in the evidence, and (c) an immaterial finding as to any cause of action alleged against this appellee.

The trial court in an order dated March 10, 1955 (Transcript Vol. IV, page 144) sustained the motions for judgment non obstante veredicto of the three insurance companies: Bankers Health and Accident Company, City National Life Insurance Company, and Southern Life Insurance Company. This order recited that the motions were "sustained on the limited grounds that this is a suit for usury and that the facts are insufficient to show that the insurance company ever made any loan to the plaintiff Robert B. Dean, and that there is no basis of recovery against the insurance company found in the answers of the jury to the issues submitted."

In his brief, Robert B. Dean as appellant, says that the court erred in rending judgment non obstante veredicto in favor of the three insurance companies because there are three ways in which the insurance companies are liable for usurious interest paid and for damages for wrongful collection efforts. These three ways are: (A) Under the common law principle of *respondeat superior* a principal is liable for the action of his agent in the matter of usury penalties under Art. 5073, V.A.C.S.; (B) by virtue of their violations of the Insurance Code, the insurance companies as

well as the loan companies are liable on the grounds of usury; and (C) at common law, the insurance companies as principals, are liable for actual damages resulting from the excessive collection efforts of their agents, the loan companies.

It is undisputed that the loan companies, through their servants, agents and employees acted as agents for the insurance companies in the sale of insurance and the insurance policies to R. B. Dean. The amounts of the premiums were advanced to Dean by the loan companies and included in the loans and the notes signed by Dean. The premiums, less commissions, were then immediately paid to the insurance companies by the loan companies; sometimes the full premiums were immediately paid to the insurance companies, who then sent the loan companies the amount of their commissions for acting as insurance agents. In either event, so far as the record shows, the insurance companies were immediately paid their insurance premiums by the loan companies, and we find no record of any demand or effort by the loan companies to obtain a refund from the insurance companies of all or any part of the premiums after Dean failed to pay his notes.

 (A) Art. 5069, V.A.C.S., defines interest as the compensation allowed by law, or fixed by the parties "to a contract for the use or forbearance or detention of money"; and defines usury as "interest in excess of the amount allowed by law."

We find no evidence that the insurance companies collected interest from Dean for the "use or forbearance or detention of money" or that they furnished any of the loan funds. The insurance companies did collect money paid by the loan companies for Dean, but it was for insurance premiums, not interest on money lent. The insurance companies did not lend money to Dean. If the insurance companies through their agents violated the Insurance Code, as the jury found and as we believe the evidence showed they did, they would doubtless be liable to Dean for excessive premiums charged and for exemplary damages if the prerequisite facts were found which furnish the only basis for exemplary damages. However Dean did not seek such a recovery. He sued for usurious interest. And as we see it, Arts. 5069, 5071 and 5073 do not apply to a case of excessive or wrongful insurance premiums. The three insurance companies involved here were chartered under the laws of the State of Texas to do an insurance business on the mutual assessment plan.

 (B) Appellant Dean relies on Art. 3.53, secs. 6 and 10, of the Insurance Code. These statutes refer to: (6) commissions received by "lenders, lender agents and insurance agents", and provides that should such commissions be excessive, then "such commissions shall be deemed to be an interest charge *on the money borrowed*"; and (10) an excessive premium is an exaction of interest *"on the money borrowed."* (Emphasis ours.)

In our opinion Art. 3.53, secs. 6 and 10, V.A.C.S. were intended to penalize lenders of money for using excessive insurance premiums as a device to exact usury from borrowers. This is indicated not only by the language used in secs. 6 and 10, but also by sec. 4 of the Article, which requires that lenders shall accord the borrower an option for the choice of his own insurance agent.

The two sections, 6 and 10, seem to apply only to the parties to a loan contract in connection with "the money borrowed", not to insurance companies which have not advanced any part of the loan funds to the borrower. None of the money borrowed by Dean came from any of the insurance companies. This interpretation seems to us to be consistent with the provisions of Art. 5069 which defines interest and usury, and includes as a necessary element "a contract for the use or forbearance or detention of money." Since the insurance companies made no loans to Dean, and had no contract with him for the "use or forbearance or detention of money" advanced to Dean, w

believe that under the facts of this case the insurance companies cannot be held liable on the grounds of usury "on the money borrowed."

■■■ (C) It is undoubtedly true that insurance companies are liable on the same basis as other creditors, or alleged creditors, including loan companies, for wrongful and excessive efforts to collect alleged debts due them. But we are of the opinion that the rule is not applicable here. At the time the wrongful and excessive collection efforts were made in this case, the insurance companies had already received the premiums. Dean did not owe the insurance companies for the premiums, nor did the insurance companies claim that he owed them any money. The loan companies had already paid the premiums and had included the amount of the premiums in their loans to Dean. Therefore the loan companies in their efforts to collect were acting only for themselves. Though they had acted as agents for the insurance companies in the issuance of the policies, they were not acting as agents for the insurance companies when they tried to collect the money alleged to be due on the notes signed by Dean.

The points raised by Dean in his appeal against the three insurance companies are overruled.

The judgment for usury and penalties against Royal Finance Company is affirmed.

The judgment for usury and penalties against Chlo Vean Wheatley is affirmed.

The judgment for usury and penalties against Western Guaranty Loan Company is modified so as to reduce the amount of said judgment by the sum of $122.40, and said judgment as modified is affirmed.

The judgment in favor of Triangle Loan Service is affirmed.

The judgment in favor of Bankers Health and Accident Company is affirmed.

The judgment in favor of City National Life Insurance Company is affirmed.

The judgment in favor of Southern Life Insurance Company is affirmed.

The judgment for damages for wrongful and excessive collection efforts against Western Guaranty Loan Company is reversed and remanded for a new trial.

The judgment for damages for wrongful and excessive collection efforts against Royal Finance Company is reversed and remanded for new trial.

The judgment for damages for wrongful and excesive collection efforts against Chlo Vean Wheatley is reversed and remanded for new trial.

## On Rehearing.

Appellant Chloe Vean Smith, owner of Empire Service Company, in her motion for rehearing, says that she did not object to the damage issue because no damage issue was submitted as to Empire Service Company. Appellant is obviously mistaken. In answering issues Nos. 141, 144, 151 and 152, the jury found (141) that Empire Service Company made unreasonable collection efforts against appellee Robert B. Dean; (144) in making said collection efforts against Robert B. Dean Empire Service Company acted with reckless disregard of Dean's health and welfare; (151) as a proximate result of said collection efforts, *Dean lost compensation from his work; (152) in the amount of $1,800.* (These answers of the jury will be found in Vol. I, pages 121, 122, 123 and 125 of the Transcript.)

Appellant Chloe Vean Smith also says that Empire Service Company was not in existence when this suit was filed. Again appellant is obviously mistaken. The suit was filed June 22, 1951. It named Chloe Vean Smith as a defendant, but as one of the owners of Employees Service Company (Vol. II, page 100 Transcript). In his second amended petition, appellee names Chloe Vean Smith Wheatley (she had married John Wheatley) as owner of Empire Service Company, and alleges that about July

1950 the payee in a note signed by Dean became Empire Service Company, Chloe Vean Smith Wheatley Owner, successor to C. N. Smith Loans. (Vol. IV, pages 78, 79, 84, 85 and 86, Transcript.)

The testimony of William Kinter, manager of Empire Service Company, also shows that Empire Service Company was in existence when this suit was filed June 22, 1951. Chloe Wheatley was the owner. The company records were produced. They show that Dean applied for credit in 1950 and the date of his last loan was in January 1951. (Vol. Two, pp. 510–512, Statement of Facts.)

Even if we were to hold (though we do not hold) that under the circumstances service of citation in connection with appellee Dean's Original Petition was insufficient to put Chloe Vean Smith Wheatley in court on Dean's amended petitions filed later, we would necessarily hold as we did in our original opinion, that she entered her appearance in the trial court when she filed a motion for new trial (Vol. III, page 169, Transcript) and thereafter a motion for remittitur and new trial (Vol. II, page 145, Transcript). She also entered her appearance in this Court by filing her appeal. Therefore she will be in court if there should be another trial, following a reversal on appeal.

Appellant Western Guaranty Loan Company, joined by other appellants, says that we should reverse and render judgment in this case, notwithstanding the fact that there was no finding under any one issue of the entire amount of damages caused jointly by all the defendants. Appellant points out that appellee Dean has already received $3,700 in settlements with various defendants; there were findings in severalty under separate issues as to damages caused by certain of the remaining defendants—these several findings totaling $3,200, which appellant says we should accept as a finding of the entire damage. The amount thus arrived at as the entire damage is less than Dean has already received in settlements, so that his cause, say appellants, has been extinguished.

We are unable to agree. The total of $3,200 of the separate findings against some of the defendants is not the same as a finding of the entire damage caused jointly by all the tort-feasors. It takes into consideration only the damages caused by the defendants who did not settle with appellee. The entire damage must take into consideration the entire amount of damages caused by all the joint tort-feasors, including those who paid money in settlement as well as those against whom a judgment was rendered.

Appellant Royal Finance Company says that no damage issue was submitted as to Royal, therefore this case cannot be reversed and remanded for new trial, but should be reversed and rendered for appellant.

It is true as stated in our main opinion that no damage issue was submitted as to Royal. The trial court endeavored to repair the omission by his own finding as to damages. Neither Royal nor any of the other joint tort-feasors was entitled to a separate issue as to damages caused by each defendant separately. The court did not err in failing to submit a separate damage issue as to Royal Finance Company. The error lay in the court's failure to submit one issue as to the entire damage caused jointly by all the tort-feasors. We see no basis for a rendering of judgment in favor of Royal Finance Company.

Appellee Dean in his motion for rehearing says that Royal Finance Company never objected or excepted to the finding of actual damages as to Royal on a separate liability basis. As pointed out above, no damage issue as to Royal was submitted to the jury. The court entered its own damage finding as to Royal. We think this was error. At any rate other defendants did object to the court's charge to the jury on the grounds that the court was in error in submitting separate damage issues to the jury in a case where the damages were indivisible. Such

objection was good. And the cause as to damages, being indivisible, cannot be reversed and remanded as to some of the parties found to be liable as participating joint tort-feasors and rendered in favor of others.

All motions for rehearing are overruled.